**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 10-61792-CIV-LENARD/GOODMAN**

MANAGEMENT HEALTH SYSTEMS, INC.
A Florida Corporation d/b/a MedPro Staffing,

    Plaintiff,

v.

ACCESS THERAPIES, INC.,
An Indiana Corporation,

    Defendant.
_____/

**REPORT AND RECOMMENDATIONS**

This matter is before the Court on Plaintiff Management Health Systems, Inc.'s Motion to Remand (DE# 9), filed October 27, 2010. The Honorable Joan A. Lenard referred this motion to me on October 28, 2010 (DE# 10). I have reviewed the motion, the response, the reply and pertinent portions of the record. I held a hearing on the motion on December 6, 2010. For the reasons stated herein, I respectfully recommend that the motion be denied.

**BACKGROUND**

On March 2, 2010, Plaintiff sued Defendant in the 17th Judicial Circuit Court in Broward County, Florida. The two-count complaint for "tortious interference with contractual relations" and "tortious interference with contractual/business relations" charges Defendant with wrongfully inducing the Plaintiff's employees to breach their employment contracts. The complaint does not allege a specific amount of damages. In fact, it does not even allege the requisite amount for circuit court jurisdiction.[1] Pursuant to Florida Statute § 768.72, Plaintiff reserved the right to amend the complaint to request punitive damages (DE# 1-2, at 2-9).

---

[1] Florida Statute § 26.012(2)(a) provides that circuit courts shall have exclusive original jurisdiction of all "actions at law not cognizable by the county courts." Florida Statute § 34.01(1)(c) provides that county courts shall have original jurisdiction of "all actions at law in which the matter in controversy does not exceed the sum of $15,000." Florida Rule of Civil Procedure 1.110(b) requires a pleading, such as a complaint, to contain "a short and plain statement of the grounds upon

Defendant removed this case on September 27, 2010, alleging diversity jurisdiction (DE# 1).  There is no dispute that the parties are completely diverse.  Plaintiff moves to remand to state court on the grounds that the amount in controversy not does exceed the $75,000 jurisdictional amount required by 28 U.S.C. § 1332(a).  Alternatively, Plaintiff argues that even if the amount in controversy is met, Defendant was on notice of the grounds for removal and waited too long before filing its removal notice.  In addition, Plaintiff argues that Defendant, by litigating in state court, waived its right to removal.

Defendant claims that it first became aware that Plaintiff sought damages in excess of $75,000 when it received an interrogatory response on September 24, 2010 (three days before removing this action).  Specifically, in response to an interrogatory asking Plaintiff to specify its damages, Plaintiff noted that it would have received approximately $250,000 in net revenues and $60,000 in profit had one employee not been induced to terminate her contract.

Plaintiff now argues, however, that its interrogatory response indicates that the amount in controversy is only approximately $50,000, less than the diversity statute's jurisdictional threshold.  Defendant does not concede this point.  Instead, Defendant argues that, even if Plaintiff is only seeking $50,000 in *compensatory damages*, the complaint reserves the right to seek punitive damages, and those damages, added to the compensatory damages, exceed $75,000.  Thus, even if the original notice of removal was defective, Plaintiff's admission in its motion to remand that it is seeking approximately $50,000 (plus punitive damages) would satisfy the jurisdictional amount and cure any defect present at the time of removal.

At the hearing, Plaintiff argued that, at this stage in the litigation, punitive damages are not part of the case because Florida's statutory gate-keeper provision prohibits punitive damages from being initially alleged in a complaint and can only be added later after obtaining court approval.  *See* Fla. Stat. § 768.72.  Therefore, Plaintiff urges the Court not to consider punitive damages in determining whether the jurisdictional amount is met.  Finally, Plaintiff argues that Defendant waived its right to removal by not removing the case when originally filed (because Defendant

---

which the court's jurisdiction depends."  Thus, in order to properly pursue a lawsuit for money damages in state circuit court, Plaintiff was required to allege that the amount in controversy exceeded $15,000.  It did not do so.

2

supposedly should have figured out that the case was removable on its face) and by propounding discovery, filing a motion to dismiss, and noticing a hearing on the motion to dismiss while still in state court.

In its motion to remand, Plaintiff also argued that Defendant's removal notice was defective because Defendant did not first confer with Plaintiff, a supposed violation of Local Rule 7.1's requirement that a movant first confer with opposing counsel before filing a motion.  At the hearing, however, Plaintiff abandoned this argument, a wise decision in light of the Local Rule's applicability to *motions* (as opposed to removal *notices*).  *Clemmer v. State of Florida*, No. 05-349, 2005 WL 2656608, at *2 (N.D. Fla. Oct. 17, 2005) (finding no local rule violation because the rule "requires a memorandum only in support of a motion" and a removal notice "is not a motion").

Legal scholars, ancient statesmen, famous warlords and singer/songwriters are among those who have championed the wisdom of giving up a losing battle.  For example, Chinese warfare expert Sun Tzu, in "The Art of War," extolled the strategic virtues of a warrior who "knows when he can fight and when he cannot."[2]  Likewise, well-known Seventh Circuit Court of Appeals Judge Richard Posner advises lawyers appearing at oral arguments not to display a "lack of candor by refusing to make unavoidable concessions." [3]  In a similar vein, Demosthenes, the Athenian orator and statesman who also fought in a great battle in 338 B.C. between the Athenians and the Macedonians, explained his decision to flee the battlefield by saying, "the man who runs away may fight again."[4]  For a more well-known, contemporary, entertainment-based version of this philosophy, see *The Gambler*, a hit song written by Don Schiltz and made popular by Kenny Rogers.  That song, which won Kenny

---

[2] Sun Tzu - Wikiquote, http://en.wikiquote.org/wiki/The_Art_of_War (last visited Dec. 8, 2010).

[3] Richard Posner, *Convincing a Federal Court of Appeals*, ABA SECTION OF LITIGATION (May 2008), *available at* http://www.uslaw.com/library/Litigation/Convincing_Federal_Court_Appeals.php?item=137130 (registration required).

[4] Trivia on Origins of Sayings - Live to Fight Another Day, http://www.trivia-library.com/b/origins-of-sayings-live-to-fight-another-day.htm (last visited December 8, 2010).

Rogers the Grammy award for best male country vocal performance in 1980, contains the lyric, "you got to know when to hold 'em, know when fold 'em / Know when to walk away, know when to run."[5]

Regardless of whether Plaintiff is familiar with these comments made throughout history, it nonetheless followed the core philosophy (albeit belatedly).

## **STANDARD FOR REMOVAL**

A defendant may remove an action within one year of its initial filing in state court when the action, although not removable at the time of filing, becomes removable once the defendant receives a motion, pleading, or "other paper" which enables the defendant to ascertain the factual basis for removal.  28 U.S.C. § 1446(b) (second sentence).  When damages are unspecified in the pleadings, the removing party has the burden of establishing the jurisdictional amount by a preponderance of the evidence.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007).  The removing party must show "that the amount in controversy can more likely than not be satisfied."  *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001).

When removal is based on a litigation document received by the defendant, the district court's inquiry must focus on the factual allegations contained in the notice of removal and accompanying document.  *Lowery*, 483 F.3d at 1213-15.  The amount in controversy cannot be established by speculation unsupported by the documentary record.  *Id.* at 1213 n.63, 1215.

Because "a plaintiff will frequently attempt to frustrate" removal, "courts applying *Lowery* will often look to the efforts that the removing party has undertaken to ascertain the jurisdictional amount."  *Act Lending Co. v. Mortgage Ins. Agency Ltd.*, No. 09-60729, 2009 WL 2834789 (S.D. Fla. Aug. 27, 2009) (citing *Lowery*, 483 F.3d at 1215 n.63).  Not only may a defendant not guess as to the amount in controversy when evaluating a case for removal, but counsel "has a Rule 11 obligation to remove a case only when he has a good faith basis for concluding" that there is federal court jurisdiction.  *Id.*  Framed by this standard, it is "highly questionable" whether a defendant could ever in good faith file a removal notice on

---

[5] KENNY ROGERS, THE GAMBLER (United Artists 1978).

4

diversity grounds where the defendant has in his possession "only [the plaintiff's] bare pleadings containing unspecified damages." *Id.*

## ANALYSIS

I begin my analysis by noting that this case was not removable at inception. The complaint did not allege specific damages and removal at that time would have been speculative and thus premature. *See Lowery*, 483 F.3d at 1215 n.63 ("We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us -- where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice -- without seriously testing the limits of compliance with Rule 11.").

Because the complaint contained no specific damages allegation, Plaintiff's argument that the case was "removable on its face" because the allegations "indicate[d] that the amount in controversy *may* exceed $75,000" is unpersuasive (DE# 9, at 7-8) (emphasis added). The only way Defendant could have tried to remove the complaint at inception would have been to *guess* at the damages -- an impermissible approach prohibited by, *inter alia*, Rule 11. Defendant therefore did not violate 28 U.S.C. § 1446(b)'s requirement that the removal notice be filed within thirty days after a defendant's receipt of the initial pleading setting forth the claim. Instead, this case is governed by § 1446(b)'s second sentence, which permits removal within 30 days from the date on which the defendant can ascertain that the case is removable, so long as the case is not removed more than one year from the commencement of the action in state court.

I now turn to the interrogatory propounded by Defendant. Defendant requested that Plaintiff "state with particularity the amount of damages that Plaintiff claims." Plaintiff responded:

> MedPro believes Access engaged in a systematic, deliberate and willful course of conduct in which they solicited employees, whom they knew to be under contract with Plaintiff, and convinced them to breach and terminate their contracts with the Plaintiff. At this point in time, Plaintiff is aware that Access tortiously interfered with Plaintiff's contractual arrangement with Ms. Ching and induced her to terminate her contact with the Plaintiff.

5

> At the time of Ms. Ching's termination, Ms. Ching had approximately 19 months remaining in her employment agreement with the Plaintiff. **If Ms. Ching had fulfilled her contractual agreement, her employment would have generated about $200,000.00 in revenue and $60,000.00 in profit for the Plaintiff**. However, Ms. Ching only paid Plaintiff $10,556.00 for the prorated damages amount from her contract, thereby damaging the Plaintiff by the difference between what the Plaintiff contracted for and what was ultimately received from Ms. Ching's employment with the Plaintiff.
>
> MedPro also has incurred undetermined damages relating to Access' Interference with its contract and placement of employees with Select Medical.
>
> Plaintiff also believes that there are **other** potential instances of Access' interference with the Plaintiff's employees, which caused the contracts to be breached and terminated, and which damages Plaintiff by **lost revenue**. Such instances, if true, would amount to additional damages to the Plaintiff and the potential for punitive damages.

(DE# 1, at 3-4) (emphasis added).

Based on Plaintiff's interrogatory response, Defendant determined that Plaintiff was seeking at least approximately $250,000 -- the lost revenue plus the lost profit, less the prorated damage amount paid. Numerous courts have found that lost revenue is an appropriate measure for determining the amount in controversy under § 1332(a). *E.g.*, *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 447 (5th Cir. 1971); *Mahoney v. Depuy Orthopaedics, Inc.* No. 07-1321, 2007 WL 3341389, at * 4 (E.D. Cal. Nov. 8, 2007). Lost revenue also appears to be an appropriate measure of damages for tortious interference claims under Florida law. *Cf. Pony Express Courier Corp. v. Zimmer*, 475 So. 2d 1316, 1317 (Fla. 2d DCA 1985) (noting that the "lower court found that Pony Express either offered no proof or failed to prove compensable deprivation in the form of lost revenue and goodwill alleged by it in those counts to have resulted from the appellees' tortious interference with contractual relationships").

But now, after submitting its interrogatory response, and after Defendant filed its removal notice, Plaintiff contends that "the difference between what the Plaintiff contracted for and what was ultimately received" actually refers only to the *lost profit* minus the prorated damages paid, which is about $50,000. This valuation theory, however, is hardly apparent from Plaintiff's response to the interrogatory.

6

Because the interrogatory requested a specific statement of the damages sought, the most straightforward reading of the Plaintiff's response is that Plaintiff was seeking $200,000 in lost revenue. Otherwise it would have made little sense to include that figure in the response. Moreover, as highlighted above, Plaintiff's interrogatory response explained that it might have suffered other, presumably similar damages, involving other employees -- and described those damages in terms of "lost revenue."

Also, Plaintiff and Ms. Ching contracted for an hourly rate in return for Ms. Ching's services, not a specific revenue or profit figure (DE# 1-2, at 10-15). Thus, "what the Plaintiff contracted for" was the benefit of Ms. Ching's services. The interrogatory response mentioned two measures of that benefit -- lost revenues and lost profits -- but did not state or imply that Plaintiff was seeking only one of the two measures.

Furthermore, the facts giving rise to removal jurisdiction are those that exist **at the time of removal** and a district court may properly consider post-removal evidence only in determining whether the jurisdictional amount was satisfied at that time. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001*); Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. Fla. 2000); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994). Therefore, Plaintiff is bound by the lost revenue calculation contained in the interrogatory response and the Court is not permitted to credit Plaintiff's *post*-removal statement, which cannot be readily gleaned from (and in fact contradicts) Plaintiff's interrogatory response, that Plaintiff is actually seeking only lost profits.

By any measure, Plaintiff's interrogatory response indicated that it was more likely than not that Plaintiff was seeking lost revenue damages in state court. Accordingly, I find that the Plaintiff's response to the interrogatory establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.[6]

---

[6] When questioned during oral argument whether, upon return to state court, Plaintiff would limit the damages sought to the roughly $50,000 in lost profits (and remain below the jurisdictional threshold for removal), Plaintiff's counsel declined to provide an unequivocal answer. Instead, Plaintiff's counsel proposed that Plaintiff would conduct additional fact investigation after remand and potentially add additional plaintiffs to this lawsuit. Plaintiff's counsel also suggested that class certification may be appropriate at a later point in this litigation.

7

Assuming, *arguendo*, that Plaintiff's after-the-fact interpretation of the interrogatory response (i.e., that Plaintiff seeks only lost profits) were persuasive, this would merely compel the alternative holding that Plaintiff's motion to remand itself provides sufficient grounds for removal.  *See Cruz v. Lowe's Home Centers, Inc.*, No. 09-1030, 2009 WL 2180489, at *3 (M.D. Fla. July 21, 2009) (motion to remand may itself provide sufficient evidence for removal and cure an otherwise deficient notice of removal).  This alternative ground would arise because the $50,000 lost profit claim, when *combined with potential punitive damages,* clearly exceeds the jurisdictional amount.  The Eleventh Circuit requires that district courts take punitive damages into account when assessing if the jurisdictional amount is met, and state tort law provides that punitive damages are available for tortious interference claims.  *See* Fla. Stat. § 768.73 (providing for treble damages); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (courts must consider punitive damages when determining the amount in controversy unless it appears **to a legal certainty** that they cannot be recovered); *Air Ambulance Prof'ls, Inc. v. Thin Air*, 809 So. 2d 28, 30 (Fla. 4th DCA 2002) (tortious interference claim may support punitive damages if the evidence shows "truly culpable behavior").[7]

---

Plaintiff's counsel further explained at the hearing that if the amount in controversy clearly showed more than $75,000 at some point after a remand, then Plaintiff would not object to removal at that time.  But this suggested course of action could well defeat Defendant's right to removal because the removal statute places an absolute bar on removal after one year of the original filing in state court.  28 U.S.C. § 1446(b).  Moreover, because I find that Defendant has met its burden of proving the requisite amount in controversy by a preponderance of the evidence, it is not necessary for the Plaintiff to agree that removal is warranted or to wait until removal jurisdiction can be established as an ontological certitude.

[7]   Additionally, despite the fact that this case was removed pursuant to the Court's diversity jurisdiction, the Court need not consider, as Plaintiff suggested during oral argument, the effect of Florida's gate-keeper provisions for punitive damages because the Eleventh Circuit has held that those provisions are not binding on federal courts in diversity cases under the *Erie* doctrine.  *Cohen v. Office Depot, Inc.*, 184 F.3d 1292 (11th Cir. 1999), *vacated on other grounds*, 204 F.3d 1069 (11th Cir. 2000) (holding that Federal Rule of Civil Procedure 8(a) overrides Fla. Stat. § 768.72; therefore, a plaintiff in a diversity action need not obtain leave of the court before pleading punitive damages).

Finally, Plaintiff's position that Defendant waived its right to remove is unfounded. Only litigation "on the merits" in state court, defined as "substantial offensive or defensive action," effectively waives the defendant's right to removal. *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246-47 (11th Cir. 2004). But when a defendant files a motion to dismiss in state court and then removes to federal court while the motion to dismiss is still pending, the defendant does not necessarily waive its right to remove. *Cogdell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004). Whether a defendant has waived its right to remove requires that the Court examine the defendant's actions on a case-by-case basis. *Yusefzadeh*, 365 F.3d at 1246.

In support of its waiver argument, Plaintiff points to the fact that Defendant filed discovery motions in state court, attended a hearing on discovery, filed a motion to dismiss, and noticed a hearing on the motion to dismiss. But all of these actions took place before September 24, 2010, the date when Defendant received the interrogatory response evidencing an amount in controversy that exceeded the $75,000 jurisdictional threshold. It is axiomatic that a party cannot waive a right that it does not yet have. *E.g.*, *Cruz*, 2009 WL 2180489, at *3. The record indicates that upon receiving notice of its right to remove, Defendant took no further action in state court and promptly removed this case to federal court three days later. I therefore find that Defendant did not waive its right to remove.

## CONCLUSION

Defendant has established by a preponderance of the evidence that this case was removable pursuant to the Court's diversity jurisdiction and did not waive its right to remove by litigating on the merits in state court after its right to remove accrued. I therefore **respectfully recommend** that Plaintiff's motion to remand be **denied**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Each party may file a response to the other party's objection within 14 days of the objections. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue

covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this 8th day of December, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Joan A. Lenard
All counsel of record